**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KENYATTA QUINN MITCHELL,<br><br>                              Petitioner,<br><br>v.<br><br>DIRECTOR OF THE CALIFORNIA<br>DEPARTMENT OF CORRECTIONS<br>AND REHABILITATION, et al.,<br>                              Respondents. | Case No.:  18cv0697-WQH (BLM)<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING MOTION FOR APPOINTMENT OF COUNSEL** |

Kenyatta Quinn Mitchell is a state prisoner proceeding pro se and in forma pauperis with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his San Diego County Superior Court conviction for robbery and 17-year sentence, enhanced as a result of prior convictions.  (ECF No. 1.)  He claims his federal constitutional rights were violated by the exclusion of a defense witness at the preliminary hearing (claim one), by ineffective assistance of trial counsel in failing to obtain exculpatory evidence, interview witnesses, confer on discovery, and acting under a conflict of interest arising from a belief Petitioner was guilty (claim two), by a fundamentally unfair trial arising from those errors which necessitated relieving counsel and representing himself at trial (claim three), and because his sentence is so excessive, in particular as a result of the prior conviction enhancements, it amounts to cruel and unusual punishment (claim four).  (Id. at 6-9.)

Respondent has filed an Answer and lodged portions of the state court record. (ECF Nos. 23-24.) Respondent contends federal habeas relief is unavailable because: (a) claim one does not state a federal claim, (b) state court remedies are not exhausted as to claim three as it was not presented to any state court, but it may be denied as conclusory notwithstanding the failure to exhaust, and (c) the state court adjudication of claims one, two and four is neither contrary to, nor an unreasonable application of, clearly established federal law, nor based on an unreasonable determination of the facts. (Answer at 1-3; Memo. of P&A in Supp. of Answer ["Ans. Mem."] at 5-15.)

Petitioner has filed a Traverse in which he requests an evidentiary hearing. (ECF No. 25.) He has also filed a Motion for appointment of counsel in which he argues the assistance of counsel is needed to assist him in obtaining discovery regarding the defense of necessity which he was unable to completely present at trial, and is required if an evidentiary hearing is held. (ECF No. 27.)

As set forth below, the Court finds that the state court adjudication of Petitioner's claims is neither contrary to, nor an unreasonable application of, clearly established federal law, nor based on an unreasonable determination of the facts. Even if Petitioner could satisfy that standard he has not alleged facts which, if true, demonstrate a violation of his federal constitutional rights. Finally, neither appointment of counsel nor an evidentiary hearing are warranted. The Court recommends the Motion for appointment of counsel be denied, and the Petition be denied without holding an evidentiary hearing.

## I. PROCEDURAL BACKGROUND

In a one-count Amended Information filed in the San Diego County Superior Court on December 12, 2016, Petitioner was charged with robbery in violation of California Penal Code § 211. (Lodgment No. 1, Clerk's Transcript ["CT"] at 12-15.) The Information alleged he had five prior felony convictions which rendered him ineligible for probation, two of which were eligible to enhance his sentence because they were committed within five years of his release from prison, and one of which was a strike within the meaning of California's Three Strikes law. (Id.)

Petitioner represented himself at trial. On December 14, 2016, a jury found him guilty of robbery after deliberating less than an hour, and he then admitted the truth of the prior conviction allegations. (CT 93, 154.) On January 13, 2017, he was sentenced to the upper term of ten years on the robbery conviction, with consecutive terms of one year each for the two prison priors and five years for the strike prior, for a total of 17 years in state prison. (CT 156-57.)

On September 6, 2016, Petitioner's appointed appellate counsel filed a brief pursuant to People v. Wende, 25 Cal.3d 436 (1979) and Anders v. California, 386 U.S. 738 (1967), urging no specific contentions as grounds for relief but identifying possible claims as (1) whether Petitioner knowingly and intelligently waived his right to counsel, (2) whether it was error to admit into evidence the victim's 911 calls, and (3) whether the court erred in the manner in which it used the prior felony convictions to enhance the sentence. (Lodgment No. 3.) On October 4, 2017, Petitioner filed a pro se supplemental brief in which he raised the claims presented here. (Lodgment No. 4.)

Prior to the appellate court ruling on the appeal, Petitioner filed a pro se habeas petition in the trial court on August 21, 2016, raising claims one and four here. (Lodgment No. 5.) That petition was dismissed on the basis that the trial court lacked jurisdiction to adjudicate the claims while the direct appeal was pending. (Lodgment No. 6, In re Mitchell, No. HCN 1499, order at 2 (Cal.Sup.Ct. Aug. 22, 2017).)

On December 5, 2017, the appellate court affirmed the conviction and sentence. (Lodgment No. 7, People v. Mitchell, No. D071658, slip op. (Cal.App.Ct. Dec. 5, 2017).) On February 5, 2018, Petitioner filed a pro se petition for review in the California Supreme Court presenting the claims raised here. (Lodgment No. 8.) The petition was summarily denied. (Lodgment No. 9, People v. Mitchell, No. S246844, order (Cal. Mar. 14, 2018).)

## II. UNDERLYING FACTS

Petitioner's motion to represent himself was granted at his arraignment on August 3, 2016, and he represented himself at the preliminary hearing on September 26, 2016. (CT 127, 134.) On October 11, 2016, he withdrew his request to represent himself and the

public defender was appointed. (CT 136.) On November 21, 2016, about a week before trial was scheduled to begin, he brought a <u>Marsden</u>[1] motion. During the <u>Marsden</u> hearing Petitioner stated that he had always wanted to represent himself but had requested an attorney to assist him with legal technicalities he struggled with pro per, such as subpoenas, and although counsel had negotiated a plea offer of seven years and four months he rejected the offer because he wanted to go to trial. (Lodgment No. 2, Reporter's Tr. ["RT"] at 157, 167.) Defense counsel informed the court she had entered the case late and found some discovery missing, including the surveillance video of the incident, the 911 calls, and the preliminary hearing transcript, which she immediately acquired and discussed with Petitioner, along with a necessity defense, and then negotiated the seven year, four month offer. (RT 157-62.) When asked by the trial judge what, in her opinion, the surveillance video of the incident showed, defense counsel stated:

> The incident – you see from the surveillance, the incident occurred at the trolley station – multiple surveillance videos and different vantage points. It does appear the complaining witness or victim is seen walking up and down the platform probably talking on her cell phone. She's alone. It is broad daylight, not nighttime. It does show Mr. Mitchell come into the scene. It appears as though he is yelling, not necessarily at anyone in particular. He does appear to be excited in manner, just kind of yelling at no one really.
>
> He was walking in among the platform. At one point we see him cross from one side of the platform over to the other side, not through a walkway where you are supposed to go. He gets down on the tracks. He comes over to her side where the victim still appears to be on her cell phone. He walked up to her. There is an allegation in the report that he punched her in the head. It did not appear from my view that there was a punch to the head. It does appear that he grabs on to her, grabs her phone, looks like she kind of like turns around like they go in a circle as trying to get the phone from her. Then he walks off, and she just looks like she is kind of stunned and walked after him.

---

[1] <u>People v. Marsden</u>, 2 Cal.3d 118, 123 (1970) (holding that a defendant represented by appointed counsel or the public defender may request the court discharge the attorney and substitute new counsel if the defendant's right to counsel would be substantially impaired by continuing with the original attorney).

There is no audio to the surveillance video. Based on the surveillance, I told Mr. Mitchell that I think he likely would be found guilty of the 211 based on the mere video itself. He did have a discussion with me with regard to the defense that he wanted to present, which he did bring up at the preliminary hearing, which is both surrounding circumstances and necessity. I talked to him about that, how I don't think those are necessarily applicable. I don't know that that's going to prevail on a defense of necessity or duress. He did indicate to me that he wanted me to interview his girlfriend regarding her being a potential witness. It's my understanding that she did not observe the alleged 211. But he wanted me to interview her with regard to his defense, which I indicated I can do.

(RT 161-62.)

The trial judge found there was no basis to relieve counsel under <u>Marsden</u> and denied the motion, the prosecutor lowered the plea offer to four years, and the trial judge cautioned Petitioner regarding the difficulties of self-representation by defendants faced with videotape evidence. (RT 206-12.) Petitioner stated: "I'm ready to go to trial. I don't want to take . . . any deal . . . and I don't want assistance of counsel." (RT 212.) The trial judge conducted a <u>Faretta</u>[2] waiver and Petitioner represented himself at trial. (RT 213-25.)

Miguel Aponte, a Code Enforcement Officer with the North County Transit District, testified that he was working at the College Boulevard Sprinter station on July 31, 2016. (RT 439-37.) About noon or 1:00 p.m. that day, Aponte received a call by Sprinter staff that a man on a train arriving at the College Boulevard station was belligerent and intoxicated. (RT 450, 453.) Aponte met the train and encountered Petitioner, who was obviously intoxicated with an unsteady gait and smelled of alcohol; Petitioner exited the train with his girlfriend and fell into a bush. (RT 450-51.) Aponte helped Petitioner to his

---

[2] The state appellate court noted that the trial judge properly converted the <u>Marsden</u> motion to one brought pursuant to <u>People v. Faretta</u>, 422 U.S. 806, 819-36 (1975) (holding that the structure of the Sixth Amendment implies a right to self-representation, and a state violates that right if it forces a criminal defendant to accept a state-appointed attorney after he knowingly and intelligently waives his right to counsel and clearly and unequivocally declares a desire to represent himself).

feet and his girlfriend said she would take care of him, so Aponte allowed him to board a bus and did not cite him for public intoxication. (RT 451, 454.)

Joann Smith testified that she was working as a 911 dispatch officer for the Oceanside Police Department on July 31, 2016, and received an emergency call at 7:47 p.m. (Lodgment No. 2, Reporter's Tr. ["RT"] at 425-26.) A female called to report that a man on the platform of the College Boulevard Sprinter station was yelling. (RT 427.) During the call the man grabbed the woman's phone, which ended the call, and the woman called back using a borrowed phone. (Id.) Transcripts of the two calls are in the record. (CT 114-21.) The woman reported during the second call that she had been assaulted and her phone stolen, and that the entire incident had been captured by surveillance cameras. (CT 115-21.) Surveillance video of the incident was played for the jury. (RT 441-46.)

Malcolm Cisneros, an Oceanside Police Officer, testified that he responded to a report of a robbery at the College Boulevard Sprinter station around 7:47 p.m. on July 31, 2017. (RT 456-57.) He contacted the person who placed the 911 calls; she appeared frightened, complained of pain on the top of her head, and provided a physical description of a person she said hit her on the head and took her cell phone. (RT 457-61, 465.) She reported that she had walked away from the man and called 911 because he was acting erratically, and while she was on the phone with the 911 operator the man moved toward her and told her: "If you call the police, I'll fuck you up." (RT 463-64.) She provided a description of the man, and Petitioner, who fit that description, was located and arrested about an hour later at the Escondido Del Lago Transit Center. (RT 461.)

Brett Byler, an Oceanside Police Officer, testified that he received a call about 8:30 p.m. on July 31, 2017, that a robbery suspect was inbound on the Sprinter. (RT 470.) As he was responding, the call was updated to report the suspect had boarded a bus and was headed to the Del Lago bus station. (Id.) He and other officers blocked the bus at the Del Lago station and ordered the passengers to exit. (RT 471.) Everyone exited except the driver and a man Officer Byler identified in court as Petitioner. (RT 473.) When Petitioner exited the bus two cell phones were found on his person. (RT 473-75.)

Scott Garrett, a Sergeant with the Oceanside Police Department, testified that he conducted a field lineup with the victim on the evening of July 31, 2017. (RT 481-82.) The victim identified one of the two cell phones found on Petitioner as belonging to her, and identified Petitioner as the man who assaulted her and took her phone. (RT 482-83.)

An excerpt of Petitioner's preliminary hearing testimony was read, and the jury was instructed to regard it the same as if Petitioner had testified at trial. (RT 493-97.) Petitioner admitted during the preliminary hearing that he took the victim's phone by force, but did so "as gently as possible," and denied he had the intent to steal, explaining he was in "a state of distress." (RT 494-95.) He denied knowing the woman was calling 911 at the time he took her phone, denied saying he would "fuck her up" if she called the police, and said he intended to use her phone to call 911 because his phone was dead, although he admitted "it was probably very unlikely that I would have returned her phone to her." (RT 495-97.) The People rested.

Petitioner called Mary Abugabara as his only witness, and his request to have her testify in a "narrative fashion" rather than a question-and-answer format was denied. (RT 498.) She testified she had been Petitioner's girlfriend for the last nine months, and that she and Petitioner were together at the Sprinter station earlier on the day of the incident, but had separated by the time of the incident. (RT 499-507.) The prosecutor's objections to the majority of Petitioner's questions were sustained and she appeared to have no relevant testimony. On cross-examination she said she was not present during the incident and did not know why Petitioner was arrested. (RT 508.) As discussed in claim one, Petitioner contends he was assaulted that day by her ex-boyfriend and wanted to use her testimony to support a defense that he took the victim's phone because he needed it to call the police to report that assault. The defense rested.

The jury found Petitioner guilty of robbery after deliberating less than an hour. (CT 93, 153.) He admitted he had been convicted of the felonies of: (1) petty theft with a prior in 2004, (2) corporal injury to a spouse in 2005, (3) assault with a deadly weapon in 2006, (4) robbery with the use of a firearm in 2006, and (5) carrying a concealed dirk or dagger

in 2011. (RT 665-69; CT 154.) He was sentenced to the upper term of ten years on the robbery count, received consecutive terms of one year each for having committed the carrying a dirk or dagger and corporal injury offenses within five years of being released from prison, and a consecutive term of five years for the prior serious or violent armed robbery felony conviction, for a total of 17 years. (CT 156-57.)

## III.   PETITIONER'S CLAIMS

(1)  Petitioner's Fifth Amendment right to due process was violated by the failure of his girlfriend Mary Abugabara to testify at the preliminary hearing, which resulted from a defective subpoena prepared by his court-appointed investigator and the denial of his request for a continuance of the preliminary hearing to cure that defect. (Pet. at 6-7.)

(2)  His Sixth Amendment right to effective assistance of counsel was violated because his appointed counsel failed to gather exculpatory evidence, interview witnesses, and confer with him on discovery, and due to a conflict of interest created when counsel admitted at the <u>Marsden</u> hearing she thought Petitioner was guilty and when she told Petitioner: "I was guilty and the jury would find me guilty as well." (Pet. at 7.)

(3)  His Fourteenth Amendment right "to be treated equally" was violated by the errors alleged in claims one and two, which caused him to represent himself, all of which resulted in a fundamentally unfair trial. (Pet. at 8.)

(4)  His Eighth Amendment right to be free from cruel and unusual punishment was violated by his excessive sentence, "primarily in enhancements." (Pet. at 9.)

## IV.   DISCUSSION

As set forth herein, the Court finds that the state court adjudication of Petitioner's claims is neither contrary to, nor an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts. Even if Petitioner could make that threshold showing, federal habeas relief is not available, and an evidentiary hearing is not warranted, because he has not alleged facts which, if true, demonstrate a federal constitutional violation. Appointment of counsel is also not warranted. The Court recommends the Petition be denied.

## A. Standard of Review

In order to obtain federal habeas relief with respect to a claim which was adjudicated on the merits in state court, a federal habeas petitioner must demonstrate that the state court adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C.A. § 2254(d) (West 2006). Even if § 2254(d) is satisfied, a petitioner must show a federal constitutional violation occurred in order to obtain relief. Fry v. Pliler, 551 U.S. 112, 119-22 (2007); Frantz v. Hazey, 533 F.3d 724, 735-36 (9th Cir. 2008) (en banc).

A state court's decision may be "contrary to" clearly established Supreme Court precedent (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407.

"[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." White v. Woodall, 572 U.S. 415, 427 (2014) (quoting Harrington v. Richter, 562 U.S. 86, 103 (2011)). In order to satisfy § 2254(d)(2), the factual findings upon which the state court's adjudication of his claims rest must be objectively unreasonable. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

## B. Claim One

Petitioner alleges in claim one that his Fifth Amendment right to due process was violated by the failure of his girlfriend Mary Abugabara to testify at the preliminary

hearing, which was caused by the failure of his court-appointed investigator to properly subpoena her, as well as the trial judge's denial of his request for a continuance of the preliminary hearing in order to cure the defect in the subpoena, which he contends was particularly unfair since the trial court granted a prosecution request for a continuance of the preliminary hearing due to the unavailability of one of their witnesses. (Pet. at 6-7; Traverse at 7.)

Respondent answers that this claim fails to state a federal claim because it "involves how evidence was produced at his preliminary hearing, which is a state law claim." (Ans. Mem. at 6.) Respondent alternately contends the claim fails because Abugabara testified at trial but did not assist the defense, and her testimony at the preliminary hearing could not have affected the outcome of the trial or preliminary hearing. (Id. at 6-7.)

Petitioner replies that he attempted to elicit from his girlfriend at trial that her ex-boyfriend assaulted him at the Sprinter station (although it is unclear when that assault took place), and that he took the victim's phone to call the police to report the assault because his own phone was dead. (Traverse at 4, 7.) He contends "the prosecution's entire case would have been discredited" had she testified at the preliminary hearing, and that he was unable to place her testimony before the jury at trial due to her failure to testify at the preliminary hearing. (Id.) He argues that a claim alleging an unfair trial due to the denial of compulsory process of an exculpatory witness is obviously cognizable on federal habeas, and that the rejection of the claim by the state court is not only an unreasonable application of clearly established federal law protecting that right, but also an unreasonable determination of the facts because the appellate court's finding that he waived the claim was based on an erroneous finding that he sought to continue the preliminary hearing to bring a motion to suppress rather than to have his girlfriend testify. (Id. at 6-8.)

Petitioner presented this claim to the state supreme court in a pro se petition for review. (Lodgment No. 8 at 6-8.) The petition was denied with an order which stated: "The petition for review is denied." (Lodgment No. 9.) It was presented to the appellate court on direct appeal in Petitioner's pro se supplemental brief. (Lodgment No. 4 at 4.)

There is a presumption that "[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." Ylst v. Nunnemaker, 501 U.S. 797, 803-06 (1991). The Court will look through the silent denial by the California Supreme Court to the last reasoned state court decision with respect to this claim, the appellate court opinion on direct appeal, which stated:

> [Petitioner] appears to claim (1) at his preliminary hearing, he was impeded from presenting his girlfriend's testimony, which was exculpatory; and (2) he was denied a continuance of his preliminary hearing to allow him to bring a motion to suppress his statements to police at the time of his arrest. The first assertion is unsupported by the record on appeal. The second assertion does reflect a request for a continuance, but also shows Mitchell *agreed* to defer his motion to suppress until after the preliminary hearing. More importantly, Mitchell's claim appears to encompass an embedded claim that denial of the continuance created some defect in the conduct of the preliminary hearing warranting dismissal of the information and that if his statements had been suppressed before the preliminary hearing, the evidence would have been insufficient to find probable cause to arraign him on the robbery charge. However, Mitchell did not bring a motion under section 995, which waives these claims. (*People v. Johnson* (1958) 164 Cal.App.2d 470, 478-479; §§ 995, 996.) Moreover, when as here ". . . the evidence produced at trial amply supports the jury's finding, any question whether the evidence produced at the preliminary hearing supported the finding of probable cause is rendered moot." (*People v. Crittenden* (1994) 9 Cal.4th 83, 137.)

(Lodgment No. 7, People v. Mitchell, No. D071658, slip op. at 5.)

Petitioner contends the appellate court's holding is based on an unreasonable determination of the facts because he made a motion for a continuance of the preliminary hearing to allow his girlfriend to testify, but the state court focused on a different motion to continue the hearing, and that it is an unreasonable application of federal law because probable cause would not have been established had his girlfriend testified at the preliminary hearing. Because claim one fails under a de novo review, the Court need not make a determination as to whether Petitioner has shown, or could with expansion of the record show, that the state court adjudication of this claim is unreasonable within the

meaning of 28 U.S.C. § 2254(d) due to an error in construing the claim or in finding a waiver. See Berghuis v. Thompkins, 560 U.S. 370, 390 (2010) (holding that irrespective of whether AEDPA deference applies, a federal habeas court may conduct a de novo review to deny a petition but not to grant one).

Petitioner has a clearly established federal due process right to present exculpatory witnesses. Chambers v. Mississippi, 410 U.S. 284, 302 (1973) ("Few rights are more fundamental than that of an accused to present witnesses in his own defense."). That right includes a guarantee of compulsory process if necessary. Washington v. Texas, 388 U.S. 14, 18-22 (1967) (holding that the right to compulsory process is violated if a criminal defendant is arbitrarily denied the opportunity to call a witness capable of presenting testimony relevant and material to the defense). Here, Petitioner argues that he was not permitted to call his girlfriend to testify at the preliminary hearing. He does not identify any other exculpatory witnesses he was not permitted to call and he acknowledges that his girlfriend testified at trial. Even if Petitioner was improperly denied the ability to subpoena his girlfriend to testify at the preliminary hearing, he has not established a constitutional violation. First, Petitioner has not established that Ms. Abugabara was an exculpatory witness. Ms. Abugabara testified at trial and Petitioner did not elicit any exculpatory testimony from her. In fact, she testified on direct examination that she did not know why Petitioner was arrested (RT 504), and testified on cross-examination she was not present during the incident and did not know what caused him to be arrested. (RT 508.) Thus, Petitioner has not established that she possessed exculpatory testimony that would have "discredited" the prosecution's case or resulted in the dismissal of the charges at the preliminary hearing. Second, Petitioner has not established that Ms. Abugabara possessed knowledge that would have been relevant and material to his defense. Petitioner argues that Ms. Abugabara could have testified that she saw her ex-boyfriend assault Petitioner, which would have supported Petitioner's necessity defense. (See Traverse at 12). Petitioner does not state when the ex-boyfriend assault occurred and does not establish that Ms. Abugabara could have testified about it. Even if Ms. Abugabara did witness the

assault, and the assault occurred near the time of the charged crime, Petitioner still has not established a due process violation because such testimony would not establish a defense of necessity and the elements of that defense are contradicted by the trial evidence. Petitioner has not identified any facts establishing that he needed to assault the victim and take her phone by force in order to report the alleged assault by his girlfriend's ex-boyfriend; Petitioner admitted during trial that he was not likely to give the phone back to the victim; and, the videotape does not show the alleged assault by the ex-boyfriend or any other relevant and material activity at the time of Petitioner's assault on the victim. As such, even if Ms. Abugabara could have testified that her ex-boyfriend had assaulted Petitioner, it would not have been relevant and material to Petitioner's necessity defense. See People v. Pepper, 41 Cal.App.4th 1029, 1035 (1996) (stating that the defense of necessity requires "evidence sufficient to establish that defendant violated the law (1) to prevent a significant evil, (2) with no adequate alternative, (3) without creating a greater danger than the one avoided, (4) with a good faith belief in the necessity, (5) with such belief being objectively reasonable, and (6) under circumstances in which he did not substantially contribute to the emergency"). That conclusion is further supported by his appointed counsel's remarks at the Marsden hearing that she did not believe Petitioner had a viable defense based on necessity or duress. For the same reasons, his contention that had his girlfriend testified at the preliminary hearing the prosecution's case would have been irredeemably devastated and the charges dropped for lack of probable cause is without support in the record.

The state court adjudication of Petitioner's claim that he was prevented from calling his girlfriend to testify at the preliminary hearing is neither contrary to, nor an unreasonable application of, clearly established federal law, and Petitioner has not shown it is based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Even if he could satisfy that standard, the claim fails under a de novo review because, assuming the facts as alleged are true (that he was unfairly prevented from calling his girlfriend to testify at the preliminary hearing), Petitioner has not established

that she had relevant and material evidence to present, and therefore has not shown he was denied his right to present an exculpatory witness. An evidentiary hearing is not necessary where, as here, the federal claim can be denied on the basis of the state court record, and where the petitioner's allegations, even if true, do not provide a basis for habeas relief. Campbell v. Wood, 18 F.3d 662, 679 (9th Cir. 1994); see also Schriro v. Landrigan, 550 U.S. 465, 474 (2007) ("It follows that if the record . . . precludes habeas relief, a district court is not required to hold an evidentiary hearing."). Accordingly, the Court recommends denying habeas relief as to claim one.

### C.    Claim Two

Petitioner alleges in claim two that his Sixth Amendment right to effective assistance of counsel was violated because his appointed counsel failed to gather exculpatory evidence, interview witnesses, and confer with him on discovery. (Pet. at 7.) He alleges counsel acted under a conflict of interest because counsel "insinuated [Petitioner] was guilty and admitted doing so in the Marsden hearing," and counsel told him during a phone conversation that: "I was guilty and the jury would find me guilty as well." (Id.)

Respondent answers that the state court adjudication of this claim, on the basis it is unsupported by the record, is an objectively reasonable application of clearly established federal law because: (a) the record shows Petitioner relied on a defense of necessity at trial, claiming he needed the victim's phone to call 911, but admitted he did not intend to give it back, and does not allege what his counsel could have done to further prepare that defense, and (b) counsel's statements that Petitioner would probably be found guilty based on the videotape does not amount to ineffective assistance or a conflict of interest because it was made outside the presence of the prosecutor and the jury. (Ans. Mem. at 7-11.)

Petitioner replies that his appointed counsel: (a) failed to confer with him about the discovery counsel found was missing when she was appointed; (b) interviewed his girlfriend, "the defense key witness," by merely conducting one phone call with her and only asked her personal questions about Petitioner, not about the charges and possible defenses; and (c) had a conflict of interest shown by the fact that a Marsden hearing was

held due to counsel's statements about his guilt and their argumentative relationship, all of which led to Petitioner representing himself which also prejudiced his defense. (Traverse at 9-11.) He contends the state court relied only on the prejudice prong of the ineffective assistance of counsel claim, which requires this Court to conduct a de novo review of the performance prong. (Id. at 10.)

Petitioner presented this claim to the state supreme court in his pro se petition for review. (Lodgment No. 8 at 8-9.) The petition was denied with an order which stated: "The petition for review is denied." (Lodgment No. 9.) It was presented to the appellate court on direct appeal in Petitioner's pro se supplemental brief (Lodgment No. 4 at 4), and denied in a written opinion. (Lodgment No. 7.)

The Court will look through the silent denial by the state supreme court to the appellate court opinion, which states:

> Mitchell's [pro se informal] response also appears to claim he was denied effective assistance from his appointed counsel because of a conflict between himself and appointed counsel that forced him to have counsel relieved and to resume self-representation. The record on appeal contains no suggestion Mitchell's election to resume representing himself was induced by any "conflict" between himself and appointed counsel. (*People v. Weber* (2013) 217 Cal.App.4th 1041, 1057 (where defendant clearly states his desire to represent himself and nothing indicates his desire to proceed without counsel was due to quality of services provided by public defender, trial court properly treats request as a *Faretta* rather than *Marsden* motion).

(Lodgment No. 7, People v. Mitchell, No. D071658, slip op. at 6.)

The clearly established United States Supreme Court law governing ineffective assistance of counsel claims is set forth in Strickland v. Washington, 466 U.S. 668 (1984). See Baylor v. Estelle, 94 F.3d 1321, 1323 (9th Cir. 1996) (stating that Strickland "has long been clearly established federal law determined by the Supreme Court of the United States"). Petitioner must show that counsel's performance was deficient, which "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. He must also show counsel's deficient performance prejudiced his defense, which requires

showing that "counsel's errors were so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable." Id. To show prejudice, Petitioner need only demonstrate a reasonable probability that the result of the proceeding would have been different absent the error. Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. Petitioner must establish both deficient performance and prejudice to establish ineffective assistance of counsel. Id. at 687.

"Surmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "The standards created by Strickland and section 2254(d) are both highly deferential and when the two apply in tandem, review is 'doubly' so." Richter, 562 U.S. at 105 (citations omitted). These standards are "difficult to meet" and "demands that state court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011). "Representation is constitutionally ineffective only if it 'so undermined the proper functioning of the adversarial process' that the defendant was denied a fair trial." Richter, 562 U.S. at 110 (quoting Strickland, 466 U.S. at 686).

The state appellate court addressed Petitioner's claim that his appointed counsel had a conflict of interest, but did not address the remaining aspects of claim two which allege counsel failed to gather exculpatory evidence, failed to interview witnesses, and failed to discuss with him the discovery she found to be missing when she was appointed. Petitioner does not here, and did not in state court, specifically identify the exculpatory evidence and missing witnesses, other than to state that counsel only interviewed his girlfriend on the telephone once and asked only personal questions about him rather than questions relevant to the charges and defenses. (Traverse at 11.) Petitioner indicates in his motion for appointment of counsel that there is a need to develop the record regarding his necessity defense, in particular "evidence of a restraining order and telephonic messages," in support of his contention that he needed the victim's phone in order to call 911 to report he was assaulted by his girlfriend's ex-boyfriend. (ECF No. 27 at 2.)

"The Supreme Court has instructed the federal courts to liberally construe the 'inartful pleading' of pro se litigants." Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir.

1987) (quoting <u>Boag v. MacDougall</u>, 454 U.S. 354, 365 (1982)). Liberal construction of pro se prisoner habeas petitions is especially important with regard to the determination as to which claims are presented. <u>Zichko v. Idaho</u>, 247 F.3d 1015, 1020 (9th Cir. 2001).

A review of Petitioner's appellate court pro se brief reveals that the state court could reasonably have read his allegations of deficient performance as intended to support his conflict of interest claim rather than as stand-alone allegations of ineffective assistance of counsel. (<u>See</u> Lodgment No. 4 at 4.) Nevertheless, out of an abundance of caution, the Court will construe Petitioner's pro se pleadings, here and in the state court, as presenting a claim of ineffective assistance of counsel based on allegations that counsel: (a) failed to obtain exculpatory evidence and interview witnesses in order to develop a defense of necessity based on his need to call 911 to report he had been assaulted, (b) failed to confer with Petitioner regarding the discovery counsel obtained upon being appointed, and (c) acted under a conflict of interest arising from those deficiencies and from expressing an opinion she thought Petitioner was guilty and would be found guilty at trial.

Petitioner is correct that to the extent the appellate court addressed one <u>Strickland</u> prong without addressing the other, a de novo review is required in this Court of the omitted prong, provided the Court needs to reach the omitted prong. <u>See</u> <u>Wiggins v. Smith</u>, 539 U.S. 510, 534 (2003) (reviewing de novo whether petitioner suffered <u>Strickland</u> prejudice where the state court reached only the <u>Strickland</u> deficient performance prong and its finding on that prong was objectively unreasonable); <u>Strickland</u>, 466 U.S. at 687 (holding that if deficient performance is not established the prejudice prong need not be addressed). Even if it is unclear which prong the state court relied on, or if the state court did not reach the merits of all the allegations of deficient performance, federal habeas relief can be denied based on a de novo review of the entire claim. <u>See</u> <u>Berghuis</u>, 560 U.S. at 390 (holding that irrespective of whether AEDPA deference applies, a federal habeas court may conduct a de novo review to deny a petition but not to grant one).

Petitioner's motion to represent himself was granted at his arraignment on August 3, 2016 (CT 127), the preliminary hearing was held on September 26, 2016 (CT 134), and

he withdrew his request to represent himself on October 11, 2016, at which time he was appointed counsel. (CT 136.) On November 21, 2016, a week before trial, a <u>Marsden</u> hearing was held during which the following exchange occurred between the trial judge, Petitioner, and his appointed public defender:

> **The Court**: Mr. Mitchell, Ms. Valdovinos [Petitioner's appointed public defender] tells me that you wish this Marsden hearing. I will ask you to speak up so that we can all hear you. Why don't you tell me about that.
>
> **Petitioner**: Well, your Honor, I just feel she has served her purpose, and I just want to proceed pro per.
>
> **The Court**: When you say she has served her purpose, what purpose was that?
>
> **Petitioner**: Well, she tried to negotiate a deal for me. And from what I understand, you know, you know, I just don't need her on the case anymore.
>
> **The Court**: All right.
>
> **Petitioner**: I was pro per to begin with, and think I had told him I needed an attorney, just based on some of the technicalities of the case. You know, subpoenas – it's difficult obtaining subpoenas and other circumstantial evidence in the case. In light of the fact now and the time that it's taking to proceed to trial, I would just rather do it pro per at this point.
>
> **The Court**: I don't know that I quite understand the mindset there because – first as relates to any negotiations. It is incumbent upon counsel to seek the best agreement possible for their client. That's something, though, whether you represent yourself or not, that you could have discussed with the prosecution, of course, in open court. [¶] As it relates to discovery, you know, any person representing themselves has a right to discovery and receives discovery during the course of the litigation. [¶] It appears to me that looking at the last court docket entry that full discovery has, indeed, been provided. It's been provided, I assume digested, by counsel because we have an upcoming trial date. Now looking at the calendar, your trial is scheduled one week from now. If counsel were to be relieved, that means that you would need to be ready for trial one week from now. [¶] I don't know much about your case other than what I have seen in the file, the Court docket. You are charged with some serious offenses that could result in time of substance being imposed on you. [¶] Do you understand all of that?

**Petitioner**:  Yes, your Honor.

**The Court**:  Okay.  Are you going to be ready for trial on the 28th?

**Petitioner**:  Yes.  I can be ready for trial on the 28th.

**The Court**:  All right.  [¶]  Ms. Valdovinos, can you tell me what the negotiations have been with the prosecution.  And what efforts you have made to represent his interest and prepare the matter for trial?

**Counsel**:    Sure, your Honor.  I received this case late in the game.  Mr. Mitchell represented himself through the preliminary hearing, as I understand.  It was post preliminary hearing he requested our office be appointed to represent him.  I was given the file on my first appearance with Mr. Mitchell on this case on November 8 for readiness conference.

When I came into the readiness conference, I informed the prosecution first and foremost I was lacking a number of pieces of discovery, and I wanted to know what their outstanding offer was.  Ultimately, I wanted a continuance of the matter because I wanted to have full discovery prior to actually negotiating the case.  When I came in on November 8, I inquired of the prosecution what their offer was.  The indicated to me the offer was the 211 and the 136.1 which is two separate strikes.  They wanted seven years, four months consecutive time as to the two counts.  At that time there was discussions with the judge to offer a single strike of 211 and a misdemeanor term doubled because of his prior strike for two years.  At that time I had inquired if the District Attorney would be willing to give low term of two years with the prior strike based on the reports that I had.  What I was lacking was the preliminary hearing transcript, the 911 call and the video.  But based on the reading of the police reports, also potentially enough for a strike, and there appeared to me that there was enough.  He is facing three strikes with a prior strike prior.

The District Attorney was not inclined to do any negotiations beyond their seven year, four months offer.  I informed that at a minimum I was missing the preliminary hearing transcript, the 911 call from the victim and the surveillance video, which I understood based on the records captured the 211 on camera.  So I requested to continue the matter, confirming the trial date so that, in the event we were able to be ready, Mr. Mitchell had the opportunity to go to trial.  I discussed with him that if we weren't ready, we could move it at that date.

After the November 8 hearing, I did receive the preliminary hearing transcript, the 911 call and the surveillance. I was informed from the prosecution after requesting they give me everything once again to make sure I wasn't missing any pieces of discovery. I was informed that I had everything. After reviewing everything, I contacted Mr. Mitchell to discuss the case with him to discuss what potential defenses we had. And if he wanted to negotiate and what he wanted to negotiate. He informed me at that time that, I believe, he just wanted to go to trial and did not want to negotiate the case at all.

**The Court**: Is that right, Mr. Mitchell?

**Petitioner**: Yes, your Honor.

**The Court**: Okay. So why did you seek counsel in this case if you wanted really to represent yourself all along?

**Petitioner**: Your Honor, I was just having some difficulty subpoenaing witnesses. But now in light of the facts of the case, I don't need those witnesses anymore, and I'm ready to proceed to trial.

**The Court**: I'm not sure that I understand that rationale. [¶] The surveillance videos, what does it capture in your judgment?

**Counsel**: The incident – you see from the surveillance, the incident occurred at the trolley station – multiple surveillance videos and different vantage points. It does appear the complaining witness or victim is seen walking up and down the platform probably talking on her cell phone. She's alone. It is broad daylight, not nighttime. It does show Mr. Mitchell come into the scene. It appears as though he is yelling, not necessarily at anyone in particular. He does appeal to be excited in manner, just kind of yelling at no one really.

He was walking in among the platforms. At one point we see him cross from one side of the platform over to the other side, not through a walkway where you are supposed to go. He gets down on the tracks. He comes over to her side where the victim still appears to be on her cell phone. He walked up to her. There is an allegation in the report that he punched her in the head. It did not appear from my view that there was a punch to the head. It does appear that he grabs on to her, grabs her phone, looks like she kind of like turns around like they go in a circle as he is trying to get the phone from her. Then he walks off, and she just looks like she is kind of stunned and walked

after him.

There is no audio to the surveillance video. Based on the surveillance, I told Mr. Mitchell that I think he likely would be found guilty of the 211 based on the mere video itself. He did have a discussion with me with regard to the defense that he wanted to present, which he did bring up at the preliminary hearing, which is both surrounding circumstances and necessity. I talked to him about that, how I don't think those are necessarily applicable. I don't know that that's going to prevail on defense of necessity or duress. He did indicate to me that he wanted me to interview his girlfriend regarding her being a potential witness. It's my understanding that she did not observe the alleged 211. But he wanted me to interview her with regard to his defense, which I indicated I can do. He also spoke with me about getting perhaps an expert, which I don't know is necessarily relevant per se to the trial. Perhaps to negotiations. I don't know about to the trial.

But I will say that I have not had an opportunity to fully negotiate with the District Attorney because I was lacking discovery at the last court date. I could negotiate only so much and throw out numbers. Based on the police report, and having reviewed the surveillance video, now I feel like I have a better understanding. I did indicate to him that if he needed additional time for me to interview his girlfriend and because we had the case for just such a short period of time, I would not be opposed at any time to interview his girlfriend and the victim to see what her actual desires are with regard to prosecution. That could help negotiate the case. If needed, to do a psychological evaluation, which I haven't even broached with the People. We really haven't had full-blown negotiations not having had all the discovery.

(RT 157-63.)

The trial judge and defense counsel then discussed the prior conviction allegations and potential sentences, and the judge encouraged Petitioner to at least hear what the prosecution had to offer in terms of a plea agreement, after which the following exchange took place:

**The Court**: Do you want more time to talk with [defense counsel] and find out at least what the District Attorney's offer is?

**Petitioner**: No, your Honor. I think all the negotiations, you know, have been considered, and I would rather proceed to trial.

**The Court**: All right.  And represent yourself?

**Petitioner**:  Yes, your Honor.

(RT 167.)

A criminal defendant is entitled under the Sixth Amendment to representation free from conflicts of interest.  <u>Wood v. Georgia</u>, 450 U.S. 261, 271 (1981).  In order to demonstrate a conflict of interest which rises to the level of a federal constitutional violation, Petitioner must show that his trial counsel actively represented conflicting interests and the conflict adversely affected counsel's performance.  <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 350 (1980).  The Sixth Amendment requires an appropriate inquiry into the grounds for a <u>Marsden</u> motion.  <u>Schell v. Witek</u>, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc); <u>Hudson v. Rushen</u>, 686 F.2d 826, 829 (9th Cir. 1982) ("The trial court must take the time to conduct such necessary inquiry as might ease the defendant's dissatisfaction, distrust, and concern.").

The record supports a finding that the trial judge conducted a thorough examination into Petitioner's reasons for wanting to represent himself.  The state appellate court reasonably found that: "The record on appeal contains no suggestion Mitchell's election to resume representing himself was induced by any "conflict" between himself and appointed counsel."  (Lodgment No. 7, <u>People v. Mitchell</u>, No. D071658, slip op. at 6.)  Petitioner stated during the <u>Marsden</u> hearing that he always wanted to try the case himself but requested counsel because he needed assistance subpoenaing witnesses (and apparently in obtaining discovery), and once he achieved those things and was ready to go to trial he no longer needed or wanted an attorney.  With respect to counsel's comment that she thought Petitioner could be convicted on the video evidence alone, that comment was made during the <u>Marsden</u> hearing in response to the trial judge's question to counsel: "The surveillance video, what does it capture in your judgment?"  (RT 161.)  Defense counsel's response, and her similar comment to Petitioner during "a telephone interview while the defendant was in jail" (<u>see</u> Lodgment No. 4 at 4), were not made in front of the jury or the prosecutor,

and were in the context of candidly advising her client of the strengths and weaknesses of his case. They do not support a finding counsel acted under a conflict of interest. <u>Cuyler</u>, 446 U.S. at 350 (holding that a petitioner must show his trial counsel actively represented conflicting interests and that the conflict adversely affected counsel's performance); <u>see also</u> <u>United States v. Davis</u>, 239 F.3d 283, 286-87 (2nd Cir. 2001) ("[I]f a defendant's allegations describe only competent counsel's candid advice about the risks of going to trial, counsel will not be placed in an actual conflict between advocating for his client's interests and his own.").

Petitioner next alleges counsel refused his request to interview witnesses and failed to obtain exculpatory evidence. (Pet. at 7.) He does not identify what exculpatory evidence counsel failed to acquire, and the only specific allegations in this respect are that counsel only interviewed Petitioner's girlfriend on the telephone once and only asked her personal questions about Petitioner rather than questions relevant to the charges and defenses. (Traverse at 11.) Petitioner indicates in his motion for appointment of counsel a need to develop the record regarding his necessity defense, in particular "evidence of a restraining order and telephonic messages." (ECF No. 27 at 2.)

Interpreting Petitioner's arguments in the light most favorable to Petitioner, he asserts that if properly interviewed, Ms. Abugabara could have explained that her ex-boyfriend assaulted Petitioner, that he needed to report the assault to the police, that she or Petitioner had a restraining order against the ex-boyfriend, and that there were telephonic messages to support these facts. Even if true, these allegations do not establish prejudice as there is no reasonable possibility they would have affected the outcome of the trial. <u>Strickland</u>, 466 U.S. at 687. The alleged additional facts do not support a necessity defense as there is no showing that the ex-boyfriend assault had just occurred, Petitioner needed to assault the victim and take her phone by force in order to report the assault by the ex-boyfriend, there was no alternative way to report the assault, or that the "need" to assault the victim was objectively reasonable. <u>See</u> <u>Pepper</u>, 41 Cal.App.4th at 1035 (stating that the defense of necessity requires "evidence sufficient to establish that defendant violated

the law (1) to prevent a significant evil, (2) with no adequate alternative, (3) without creating a greater danger than the one avoided, (4) with a good faith belief in the necessity, (5) with such belief being objectively reasonable, and (6) under circumstances in which he did not substantially contribute to the emergency"). Moreover, the trial evidence further undercut Petitioner's necessity defense as Petitioner admitted it was not likely he was going to give the phone back to the victim and the videotape did not show any conduct that would support a necessity defense.

Finally, Petitioner alleges counsel failed to discuss with him the discovery she acquired when she was appointed, which he had failed to acquire while representing himself. (Pet. at 7; Traverse at 9.) The court transcripts refute that allegation. Counsel identified that discovery during the Marsden hearing as the surveillance video, the preliminary hearing transcript, and the 911 calls. Petitioner did not at that time complain counsel had not conferred with him regarding that discovery and insisted he was prepared to proceed to trial. Petitioner also insisted on representing himself, even after counsel shared her opinion that the surveillance video could support a guilty finding by itself and his defense of necessity was unlikely to succeed, and the trial judge cautioned him that video evidence is often difficult to overcome by a self-represented defendant. The state court's rejection of Petitioner's allegation that his appointed counsel did not "explain how they would prepare the defense at trial" (Lodgment No. 4 at 4) is supported by the record. As quoted above, during the Marsden hearing Petitioner replied "Yes, your Honor" when asked by the trial judge "Is that right?" immediately after his counsel stated that after she reviewed the missing discovery and had "contacted Mr. Mitchell to discuss the case with him to discuss what potential defenses we had." (RT 160.) The rejection of this aspect of claim two is consistent with clearly established federal law. See LaGrand v. Stewart, 133 F.3d 1253, 1276-77 (9th Cir. 1998) (rejecting claim of improper denial of motion to substitute counsel based on allegations "that the new public defender did not have enough time to prepare . . . had not talked to [petitioner] much, and . . . had told him he had no defense to the charges" (citing Morris v. Slappy, 461 U.S. 1, 13-14 (1083) (holding that

the Sixth Amendment did not guarantee a defendant a "meaningful relationship" with counsel))).

Even if counsel was deficient in failing to discuss with Petitioner the video, the 911 calls or the preliminary hearing transcript, Petitioner has not alleged he was prejudiced by that failure. Petitioner admits counsel provided him with an opinion that the evidence against him was sufficient for a jury to find him guilty, and in fact told him she thought he would be found guilty. The fact that the jury found him guilty after less than an hour of deliberation supports a finding that counsel accurately advised Petitioner regarding the strength of the evidence against him and the viability of his defense of necessity. And the fact that he informed the court during the <u>Marsden</u> hearing that he was not interested in accepting a plea offer and that he insisted on going to trial even after hearing counsel's advice regarding his chance of conviction and the trial judge's caution, belies any finding that his decision was based on less than complete information. Thus, even if these allegations of deficient performance are true, they do not establish his defense would have been better developed or more effective if he had conferred with counsel regarding the discovery, or that he would have been in a better position to evaluate the plea offer, or that he was otherwise prejudiced. <u>See Strickland</u>, 466 U.S. at 694 (holding that prejudice requires showing "a probability sufficient to undermine confidence in the outcome"); <u>Lafler v. Cooper</u>, 566 U.S. 156, 163 (2012) (holding that to establish <u>Strickland</u> prejudice "[i]n the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice"); <u>Missouri v. Frye</u>, 566 U.S. 134, 147 (2012) (holding that in order to establish prejudice when a plea offer has been rejected because of counsel's deficient performance, a petitioner must show a "reasonable probability" that (1) he would have accepted the offer had he received effective assistance, (2) the prosecution would not have withdrawn the offer, (3) the court would have accepted it, and (4) the plea would have resulted in a more favorable outcome). Accordingly, with respect to the aspect of claim two alleging ineffective assistance of counsel due to a conflict of interest, the state appellate court adjudication of this claim is neither contrary to, nor an unreasonable

application of, clearly established federal law, and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

With respect to the aspects of claim two alleging counsel was ineffective for reasons other than acting under a conflict of interest, the state appellate court did not specifically address these aspects of the claim, and they were silently denied by the state supreme court. There is a presumption that a silent denial by a state supreme court is an adjudication on the merits, which "may be overcome when there is reason to think some other explanation of the state court's decision is more likely." Harrington v. Richter, 562 U.S. 86, 99-100 (2011) (citing Ylst, 501 U.S. at 803. Where, as here, there is no reason to think the state supreme court's silent denial is not a decision on the merits of the claim, Petitioner bears the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

There is a reasonable basis for the state court to have denied the ineffective assistance aspects of claim two, namely, the fact that Petitioner has not identified, here or in the state court, what evidence, which witnesses, or what discovery he predicates the claim upon. As such, his allegations are wholly conclusory, and conclusory allegations are insufficient to prove counsel provided ineffective assistance. Blackledge v. Allison, 431 U.S. 63, 74 (1977); James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994). Moreover, the facts set forth in the record, especially during the Marsden hearing, undercut Petitioner's ineffective assistance arguments. For example, counsel indicated during the Marsden hearing that she was willing to interview Petitioner's girlfriend, but Petitioner said he was satisfied with the witness interviews and insisted on immediately relieving counsel. Similarly, Petitioner alleges counsel did not discuss with him the unproduced discovery, which she identified in the Marsden hearing as the surveillance video, the 911 calls, and the preliminary hearing transcript, but counsel stated during the Marsden hearing that they had discussed that discovery. Again, even if they had not discussed those items, or counsel had failed to obtain "evidence of a restraining order and telephonic messages" supporting Petitioner's contention that he had been assaulted by his girlfriend's ex-boyfriend that day, Petitioner

reiterated his desire to relieve counsel and represent himself after counsel provided her opinion that the surveillance video alone was enough to convict him, and the unlikely chance of success on the necessity and duress defenses. The state supreme court could have reasonably found that Petitioner had not established deficient performance because Petitioner stated on the record that he had discussed the discovery with counsel, and to the extent they were not discussed, or further discovery not obtained, it was because he insisted on relieving counsel prior to her having an opportunity to do so. The state supreme court also could have reasonably found that Petitioner was not prejudiced by the alleged failures of counsel because he had no viable defense to the evidence which showed him robbing the victim, and because at the preliminary hearing prior to appointment of counsel he admitted to committing the crime. Thus, the silent denial of this aspect of claim two is neither contrary to, nor an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts. The Court would reach the same conclusion under a de novo review of the claim because Petitioner has not alleged facts which, if true, demonstrate ineffective assistance of counsel, a finding which also precludes an evidentiary hearing on claim two. <u>Campbell</u>, 18 F.3d at 679; <u>Landrigan</u>, 550 U.S. at 474.

In sum, the Court finds that the state court adjudication of claim two is neither contrary to, nor an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts. The Court also finds that Petitioner has failed to allege facts which, if true, demonstrated deficient performance of trial counsel or prejudice as a result, and claim two would fail even under a de novo review. For that same reason an evidentiary hearing is not warranted. <u>Campbell</u>, 18 F.3d at 679; <u>Landrigan</u>, 550 U.S. at 474. The Court recommends habeas relief be denied as to claim two.

## D. Claim Three

Petitioner alleges in claim three that his Fourteenth Amendment right "to be treated equally" was violated by the errors alleged in claims one and two, which resulted in the trial being "a farce and a sham." (Pet. at 8.) He alleges he received a fundamentally unfair

trial as a result of representing himself, which was caused by his appointed counsel's failure to locate exculpatory evidence or interview witnesses. (Id.)

Respondent answers that this claim was not raised in any state court and Petitioner has therefore failed to exhaust state court remedies. (Ans. Mem. at 12.) Respondent alternately contends this Court can deny the claim despite the failure to exhaust because it is conclusory and plainly meritless. (Id.)

Petitioner replies that the trial was fundamentally unfair as a result of: (1) the use of only portions of his preliminary hearing testimony, which deprived the jury of context, (2) the accumulation of errors as alleged in claims one and two, (3) limited access to the media equipment in the courtroom regarding the surveillance video and 911 recordings, and (4) because he was required to question his girlfriend in a question-and-answer format rather than allow her to testify in a narrative style. (Traverse at 11-12.)

Petitioner alleged in his state court petition for review, as he does in claim three here, that his "14th Amendment right to be treated equally" was violated because he received a fundamentally unfair trial as a result of the errors alleged in claims one and two, and due to representing himself, which came about because he received ineffective assistance from his appointed counsel. (Lodgment No. 8 at 10.) The petition was denied with an order which stated: "The petition for review is denied." (Lodgment No. 9.) The contention by Respondent that the claim is unexhausted is therefore unfounded.[3]

Even if Petitioner's pro se supplemental brief in the appellate court could be liberally construed to include this claim (see Lodgment No. 4 at 4), it was not addressed or

---

[3] Although Petitioner presents additional reasons here why he was at a disadvantage in the courtroom which were not presented to the state court, including a lack of equal access to the audio-visual equipment in the courtroom, presenting preliminary hearing testimony in manner which deprived the jury of context, and his girlfriend being required to testify in a question-and-answer format rather than a narrative style, they do not change the character of the claim so as to render it unexhausted. See Aiken v. Spalding, 841 F.2d 881, 883-85 (9th Cir. 1988) (holding that new facts may render an exhausted claim unexhausted when it "places [the] claim in a significantly different and stronger evidentiary posture that it had when presented in state court").

18cv0697-WQH (BLM)

acknowledged by the appellate court. (Lodgment No. 7.) Accordingly, the Court will presume the silent denial by the state supreme court is a decision on the merits of the claim, and Petitioner bears the burden of "showing there was no reasonable basis for the state court to deny relief." Richter, 562 U.S. at 98.

The state supreme court could have reasonably denied relief on the equal protection aspect of this claim on the basis that such a claim is wholly conclusory. In order to state an equal protection claim a petitioner must allege that he was intentionally treated differently than other similarly situated individuals based on membership in a protected class. City of Cleburne, Tex. v. Cleburn Living Ctr., 473 U.S. 432, 439 (1985). Petitioner makes no such allegations, and the state court could have reasonably rejected an equal protection claim as conclusory. See Walters v. Maass, 45 F.3d 1355, 1360 (9th Cir. 1995) ("[C]onclusory allegations do not establish an equal protection violation."). Even if he could show he was treated differently than the attorneys in the courtroom because he represented himself, such a claim would still fail because pro se litigants are not a suspect class. Wolfe v. George, 486 F.3d 1120, 1126 (9th Cir. 2007).

The state court also could have reasonably denied relief as to the aspect of claim three alleging a fundamentally unfair trial arising as a result of being forced by the other errors alleged in this case into making the decision to represent himself. Clearly established federal law provides "that the combined effect of multiple trial court errors violates due process where it renders the resulting trial fundamentally unfair." Parle v. Runnels, 505 F.3d 922, 927 (9th Cir. 2007) (citing Chambers v. Mississippi, 410 U.S. 284, 298, 302-03 (1973)). In addition, state evidentiary rulings can rise to the level of a federal due process violation if "the admission or exclusion of the evidence was so prejudicial that it rendered a trial fundamentally unfair." Estelle v. McGuire, 502 U.S. 62, 70-73 (1991).

As discussed throughout this Report, Petitioner has not shown how the fairness of his trial was diminished by the failure of his girlfriend to testify at the preliminary hearing, has not supported his allegations that he decided to represent himself because he received ineffective assistance of counsel or due to a conflict of interest, and has not identified any

exculpatory evidence he was precluded from introducing or witnesses he was not permitted to call. To the extent he contends he was not permitted to introduce evidence supporting a necessity defense based on his need to take the victim's phone to call 911 to report he was assaulted by his girlfriend's ex-boyfriend, he has identified no evidence he was preventing from introducing which would explain why he so urgently needed to call 911 that he could not have asked the victim or another person on the platform either to use their phone or call 911 for him.

The record does not support a claim that he received a fundamentally unfair trial as a result of being forced to represent himself at trial due to those unfounded allegations of error. Rather, the overwhelming evidence at trial showed he threatened and assaulted the victim, and took her phone, because she was calling 911 to report his behavior. That evidence consisted of the surveillance video which showed him committing the offense, the victim's statements during the 911 call and later to the police, along with her identification of Petitioner, which were consistent with what the jury viewed on the video, the fact that he was found in possession of the stolen phone long after his stated need for it and the lack of any indication he ever attempted to utilize it for the purpose of calling 911 himself, the record of the <u>Marsden</u> hearing where counsel provided a realistic analysis of his chance of conviction, later proved prescient by the jury finding him guilty after deliberating less than an hour, and Petitioner's own testimony at the preliminary hearing essentially admitting guilt. The fact that Petitioner insisted on going to trial and representing himself despite his counsel's accurate assessment of his chances and a reasonable plea offer, belie his claim that it was his counsel's ineffectiveness coupled with a denial of his right to call his girlfriend to testify at the preliminary hearing which caused him to represent himself, or resulted in a fundamentally unfair trial.

The Court finds that the state court adjudication of claim three is neither contrary to, nor an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts. The Court also finds Petitioner has failed to allege facts (including those presented here but not in the state court), which, if true, demonstrate

a federal constitutional violation, and that claim three fails under a de novo review. For that same reason an evidentiary hearing is not warranted. <u>Campbell</u>, 18 F.3d at 679; <u>Landrigan</u>, 550 U.S. at 474. The Court recommends habeas relief be denied at to claim three.

**E.   Claim Four**

Petitioner contends in his final claim that his Eighth Amendment right to be free from cruel and unusual punishment was violated by a sentence which is excessive, "primarily in enhancements." (Pet. at 9.) Respondent answers that the silent denial of this claim by the state supreme court did not involve an objectively unreasonable application of clearly established federal law, which provides that only grossly disproportionate sentences are precluded by the Eighth Amendment. (Ans. Mem. at 13-15.) Petitioner replies that: "It is very likely a different outcome would have been reached had so many errors not occurred." (Traverse at 13.)

This claim was raised in the state supreme court and summarily denied. (Lodgment Nos. 8-9.) It was raised in the appellate court on direct appeal but not addressed. (Lodgment Nos. 4, 7.) The Court will presume the silent denial by the state supreme court is a decision on the merits of the claim, and Petitioner bears the burden of "showing there was no reasonable basis for the state court to deny relief." <u>Richter</u>, 562 U.S. at 98.

Clearly established federal law provides that the Eighth Amendment prohibits "extreme sentences that are 'grossly disproportionate' to the crime." <u>United States v. Bland</u>, 961 F.2d 123, 128-29 (9th Cir. 1992) (quoting <u>Harmelin v. Michigan</u>, 501 U.S. 957, 1005 (1991) (holding that a comparison between the gravity of the offense and the severity of the sentence must first be made in order to determine whether it is one of the "rare" cases which leads to an inference of gross disproportionality)). In order to show his sentence is disproportionate, Petitioner must demonstrate it was objectively unreasonable for the state court to determine that this is not one of the rare cases which leads to an inference of gross disproportionality. <u>Lockyer</u>, 538 U.S. at 75-76; <u>Harmelin</u>, 501 U.S. at 1005.

The state supreme court could have reasonably denied this claim on the basis that the United States Supreme Court has upheld much more severe sentences for much less severe criminal conduct. <u>See</u> <u>e.g.</u> <u>Harmelin</u>, 501 U.S. at 1005 (upholding life in prison without the possibility of parole for possession of 672 grams of cocaine); <u>Rummel v. Estelle</u>, 445 U.S. 263, 276 (1980) (upholding life sentence for recidivist convicted of fraudulent use of a credit card for $80, passing a forged check for $28.36, and obtaining $120.75 under false pretenses). It would have been consistent with clearly established federal law had the state court rejected this claim (that it was excessive to add seven years to a ten-year sentence for robbery based on prior felony convictions for assault with a deadly weapon, robbery with the use of a firearm, and carrying a concealed dirk or dagger), on the basis that it is not one of the "exceedingly rare" or "extreme" cases which violate the Eighth Amendment. <u>Lockyer</u>, 538 U.S. at 73; <u>Rummel</u>, 445 U.S. at 272.

Accordingly, the Court finds that the state court adjudication of claim four is neither contrary to, nor an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts. The Court also finds Petitioner has failed to allege facts which, if true, demonstrate a federal constitutional violation, and claim four would fail even under a de novo review. For that same reason an evidentiary hearing is not warranted. <u>Campbell</u>, 18 F.3d at 679; <u>Landrigan</u>, 550 U.S. at 474. The Court recommends habeas relief be denied at to claim four.

**F.    Motion For Appointment Of Counsel**

Finally, Petitioner has filed a Motion for appointment of counsel. (ECF No. 27.) He requests counsel to assist with discovery, "based on the need for an evidentiary hearing," and in order "to dispose of the matter as law and justice require." (<u>Id.</u> at 1-2.) He identifies evidence he wishes to develop in support of his claims as "testimony from the defense key witness in regards to the totality of circumstances, documentary evidence of a restraining order, and telephonic messages." (<u>Id.</u> at 2.) It appears Petitioner wishes to expand the record to support his claim that he was not allowed to develop or present a complete defense of necessity at trial.

The Sixth Amendment right to counsel does not extend to federal habeas corpus actions by state prisoners. McCleskey v. Zant, 499 U.S. 467, 495 (1991); Chaney v. Lewis, 801 F.2d 1191, 1196 (9th Cir. 1986); Knaubert v. Goldsmith, 791 F.2d 722, 728 (9th Cir. 1986). Financially eligible habeas petitioners seeking relief pursuant to 28 U.S.C. § 2254 may obtain representation whenever the court "determines that the interests of justice so require." 18 U.S.C. § 3006A(a)(2)(B); Terrovona v. Kincheloe, 912 F.2d 1176, 1181 (9th Cir. 1990); Bashor v. Risley, 730 F.2d 1228, 1234 (9th Cir. 1984). The interests of justice require appointment of counsel when the court conducts an evidentiary hearing on the petition or utilizes the discovery process. Terrovona, 912 F.2d at 1177; Knaubert, 791 F.2d at 728; Rule 8(c), 28 U.S.C. foll. § 2254; Rule 6(a), 28 U.S.C. foll. § 2254. The appointment of counsel is discretionary where no evidentiary hearing or discovery is necessary. Terrovona, 912 F.2d at 1177; Knaubert, 791 F.2d at 728.

The record does not support Petitioner's contention that appointment of counsel is necessary to aid him with an evidentiary hearing or discovery, as he merely seeks to support his unfounded contention that he was legally justified in assaulting the victim and stealing her phone in order to call 911 to report he had been assaulted. As already discussed, the factual record is adequately developed to reject his claim that he was unable to fully present that defense at trial, and neither discovery nor an evidentiary hearing are required to resolve this matter. In addition, "[i]ndigent state prisoners applying for habeas relief are not entitled to appointed counsel unless the circumstances of a particular case indicate that appointed counsel is necessary to prevent due process violations." Chaney, 801 F.2d at 1196; Knaubert, 791 F.2d at 728-29. Failure to appoint counsel may result in a due process violation if the issues involved are too complex for the petitioner. Hawkins v. Bennett, 423 F.2d 948, 950 (8th Cir. 1970). "A district court should consider the legal complexity of the case, the factual complexity of the case, the petitioner's ability to investigate and present his claim, and any other relevant factors." Abdullah v. Norris, 18 F.3d 571, 573 (8th Cir. 1994).

/ / /

The Court has determined that Petitioner's allegations, liberally construed, do not warrant relief even if true. Where, as here, "the issues involved can be properly resolved on the basis of the state court record, a district court does not abuse its discretion in denying a request for court-appointed counsel." Hoggard v. Purkett, 29 F.3d 469, 471 (8th Cir. 1994); LaMere v. Risley, 827 F.2d 622, 626 (9th Cir. 1987) (finding appointment of counsel unnecessary where petitioner's "district court pleadings illustrate to us that he had a good understanding of the issues and the ability to present forcefully and coherently his contentions"). The Court finds that the interests of justice do not warrant the appointment of counsel in this case.

## V. CONCLUSION

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered denying the Petition.

**IT IS ORDERED** that no later than **October 26, 2018**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **November 16, 2018.** The parties are advised that failure to file objections with the specified time may waive the right to raise those objections on appeal of the Court's order. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

Dated: 9/28/2018

Hon. Barbara L. Major
United States Magistrate Judge

18cv0697-WQH (BLM)